UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                )
DAVID DEIGHAN,                  )
                                )
          Plaintiff,            )
                                )
     v.                         )    C.A. No. 14-264 S
                                )
SUPERMEDIA LLC; and             )
TODD SANISLOW,                  )
                                )
          Defendants.           )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

In this case the Plaintiff, David Deighan, claims that his employer, SuperMedia, and his supervisor, Todd Sanislow, discriminated against him because of his disability. His claims fall into two categories, the first dealing with his request for leave and the second with the ultimate termination of his employment. Discovery is complete. Defendants SuperMedia and Sanislow now move for summary judgment claiming that there are no disputed issues of material fact that require a trial and that Deighan's claims fail as a matter of law.[1]

_____

[1] Before the Court is Defendants' Motion for Summary Judgment (ECF No. 25), as well as Defendants' motion to strike several of Plaintiff's factual assertions and to admit several of Defendants' factual assertions (ECF No. 31). Plaintiff has filed objections to both motions (ECF No. 27; ECF No. 32) and has moved to strike several of Defendants' factual assertions (ECF No. 33).

For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED. As Defendants' and Plaintiff's other motions need not be decided in order to rule on the summary judgment issue, those motions are moot.

I.   Background

The factual backdrop to the Defendants' motion is fairly straightforward and the essential facts are undisputed. In 2012, Plaintiff David Deighan was a sales manager at Defendant SuperMedia working under the supervision of Defendant Todd Sanislow. In May of 2012, Deighan suffered from "acute anxiety disorder" and commenced medical leave from his position at SuperMedia. SuperMedia agreed to allow Deighan to take approved leave under the FMLA (for 12 weeks) and RIPFMLA (for 13 weeks), which ran concurrently. On August 13, 2012, near the conclusion of Deighan's statutory leave, Deighan notified SuperMedia that "[d]ue to my disability and recommendation from my doctors, I am not able to hold a sales or sales management position. Additionally, it is required that I not drive long distances. My current commute is 150 miles . . . ." (Defs.' Mot. Ex. B, ECF No. 25-3.) Deighan went on to request that SuperMedia give him a new position that was (1) "in the customer service and sales support arenas"; (2) "at an equivalent title and income I currently hold"; and (3) located at SuperMedia's facility in

Middleton, Massachusetts (which was located close to Deighan's house). (Id.)

The next day, Deighan submitted a "Job Accommodation Request" form to SuperMedia. (Id.) In that form, Deighan stated that his previous email "summarize[d] [his] requests" and attached a copy of that letter. (Id.) Additionally, Deighan stated that, "[p]er medical advice, the nature of the direct sales or sales management role caused and would exacerbate [his] medical condition." (Id.) Given his inability to work in his prior sales management role, Deighan requested a "permanent accommodation." (Id.)

SuperMedia agreed to extend Deighan's short-term disability leave from August through November 16, 2012 and began looking for another position that Deighan could fill outside of sales management. In September, SuperMedia notified Deighan that there were no other openings with the same title and income as Deighan's previous sales management position. (Defs.' Mot. Ex. C, ECF No. 25-3.) In response, despite the fact that Deighan had previously told SuperMedia that he was medically unable to perform the job, Deighan requested that he be able to return to the sales management position at the conclusion of his short-term disability leave on November 16, 2012. (Defs.' Mot. Ex. E, ECF No. 25-3.)

3

SuperMedia agreed to allow Deighan to return to that position under two conditions. (Id.) First, SuperMedia notified Deighan that there was a "business need" to permanently fill the sales manager position, such that, if Deighan did not return on November 16, SuperMedia would backfill the position with someone else. (Defs.' Mot. Exs. D and F, ECF No. 25-3.) Second, because Deighan had repeatedly stated that he was medically unable to work as a sales manager, SuperMedia told Deighan that he would have to provide a "doctor's note" stating that he could safely return to work. (Defs.' Mot. Ex. E, ECF No. 25-3.) Deighan responded by reaffirming his intent to return to work on November 16 and agreed to provide some sort of doctor's note clearing him to work. (Id.)

Then, on November 14, Deighan sent the following email to Sanislow and SuperMedia's human resources department:

> Due to my current medical condition, my doctors will not approve a RTW [return to work] date of November 16, 2012. With continued treatment, they are hopeful for a RTW date of early Jan[uary] 2013. Thank you for your continued flexibility.

(Pl.'s Resp. Ex. B, ECF No. 27-2.) SuperMedia responded as follows:

> Thank you for your accommodation request. Unfortunately, we are unable to accommodate you with additional time off. We look forward to seeing you on November 16, 2012 . . . . If you are unable to return to work on November 16, 2012, either with or without

4

> an accommodation, SuperMedia may fill or eliminate your position due to business needs. If your position is backfilled or eliminated and you are later released to return to work, you are encouraged to reapply for available job openings. . . .

(Id.)

Deighan initially responded to SuperMedia's email by sending a farewell note to his former colleagues. (Defs.' Mot. Ex. G, ECF No. 25-3.) However, sometime thereafter, Deighan resumed contact with SuperMedia in order to request that he be able to return to work in January of 2013. (Defs.' Mot. Ex. I, ECF No. 25-3.) SuperMedia declined to keep the position open through January and backfilled the position with another employee. (Id.) SuperMedia contends that these actions were taken because there was a business need to permanently fill the sales management position after over six months (May through November of 2012) of that position being filled on a temporary basis. (See Sanislow Decl., ECF No. 25-4.)

Deighan subsequently filed the instant suit against both SuperMedia and his supervisor, Todd Sanislow. Deighan's Complaint alleges disability-based discrimination under the Rhode Island Civil Rights of People with Disabilities Act ("CRPD"), the Rhode Island Fair Employment Practices Act ("FEPA"), and the Rhode Island Civil Rights Act of 1990 ("RICRA"). Additionally, Deighan's Complaint alleges unlawful

disability-based retaliation and interference under the Family and Medical Leave Act ("FMLA") and the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA").

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate where the Court finds, "after studying the parties' evidentiary proffers and giving the benefit of reasonable doubt to those against whom the motion is directed, that there is no genuine issue of material fact in dispute and that the motion's proponent is entitled to judgment as a matter of law." Stella v. Town of Tewksbury, Mass., 4 F.3d 53, 55 (1st Cir. 1993) (citing Fed. R. Civ. P. 56). There can be no genuine issue of material fact where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Put another way, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988) (internal quotations omitted).

In determining whether there exists a genuine issue of material fact, this Court must review the facts "in the light most favorable to the party opposing the motion, and must

indulge all inferences favorable to that party . . . ." Id. However, "[t]he party opposing the motion . . . may not rest upon mere allegations." Id. Instead, the opposing party must supply specific facts, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Furthermore, all affidavits and declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. FMLA and RIPFMLA Claims

Deighan alleges that SuperMedia and Sanislow violated both the FMLA and the RIPFMLA. The FMLA entitles an "eligible employee" to 12 weeks of leave during any 12-month period for a "serious health condition" and, on return from such leave, to be restored to the same or equivalent position. 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1)(A)-(B). The RIPFMLA provides substantially the same statutory protections as the FMLA, but instead of 12 weeks of leave for an employee's "serious health condition," it provides for 13 weeks of leave for "parental and

family leave." R.I. Gen. Laws § 28-48-2. Courts have used the same analysis when reviewing claims under both the FMLA and RIPFMLA. See, e.g., Kenney v. Bethany Home of Rhode Island, No. 09-CV-289-ML, 2011 WL 1770537, at *2 n.3 (D.R.I. May 9, 2011) ("[T]he analysis of the elements of the RIPFMLA and the FMLA claims is the same, and, to the extent the state statute is not preempted, the Court's review of the federal claims addresses the state statute as well."); Tardie v. Rehab. Hosp. of Rhode Island, 6 F. Supp. 2d 125, 134 (D.R.I. 1998), aff'd, 168 F.3d 538 (1st Cir. 1999). This Court therefore analyzes Deighan's FMLA and RIPFMLA claims together.

Causes of action under both the FMLA and RIPFMLA are divided into "two distinct groups: interference claims and retaliation claims." Kenney, 2011 WL 1770537, at *2 (citing Hodgens v. General Dynmaics Corp., 144 F.3d 151, 159-60 (1st Cir. 1998)). Deighan asserts both, and each is addressed below.[2]

---

[2] As a threshold matter, Defendants argue that, unlike the FMLA, the RIPFMLA protects only "parental and family leave," R.I. Gen. Laws. § 28-48-2, not leave for a personal health condition. The statutory language is quite clear on this issue: RIPFMLA provides for "family leave" and defines "family member" as "a parent, spouse, child, mother-in-law, father-in-law, or the employee himself or herself . . . ." R.I. Gen. Laws. § 28-48-1(5) (emphasis added); see also Tardie v. Rehab. Hosp. of Rhode Island, 6 F. Supp. 2d 125 (D.R.I. 1998), aff'd, 168 F.3d 538 (1st Cir. 1999) (acknowledging that employee with stress-related heart problems could bring action against employer under RIPFMLA). However, because the Court grants Defendants' summary

1.  Interference Claims

Under an "interference" theory, Deighan bears the burden of showing that he was denied substantive rights to which he was entitled under the FMLA or RIPFMLA. Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 331-33 (1st Cir. 2005); Surprise v. Innovation Group, Inc., 925 F. Supp. 2d 134, 145 (D. Mass. 2013). There is no dispute that Deighan was provided the entire leave period to which he was entitled under the FMLA (12 weeks) and RIPFMLA (13 weeks). (Mem. Of Law in Support of Pl.'s Objection 24, ECF No. 27-1.) Additionally, there is no dispute that Deighan, at the conclusion of that leave period in August of 2013, was offered his job back. (Id.)

Nonetheless, Deighan alleges that SuperMedia interfered with his rights under the FMLA and RIPFMLA because two SuperMedia employees (Carl Mitchell and Todd Sanislow) continued to communicate with Deighan while he was on leave. (Id.) These communications included several emails, phone calls, and text messages. For the proposition that communications from an employer to an employee on medical leave may alone provide the basis for an "interference" claim, Plaintiff cites a case out of

judgment motion on other grounds, it need not address this argument in detail.

the Western District of Texas. (See id. at 24-25 (citing Benitez v. Int'l Paper Co., No. EP-06-CA-383-DB, 2007 WL 4436874, at *5 (W.D. Tex. Dec. 19, 2007).)

The Benitez case involved a plaintiff who, while on authorized leave under the FMLA, was allegedly contacted several times by his employer regarding "a work related matter." Benitez, 2007 WL 4436874, at *5. Plaintiff sued his employer for interference and the employer moved for summary judgment. While not disputing that the contact had occurred, the employer argued "that it had Plaintiff's verbal permission to contact him while he was on leave." Id. In deciding the company's motion for summary judgment, the court tacitly acknowledged that plaintiff's permission would nullify an interference claim. However, the court denied the company's summary judgment motion because, "[u]nfortunately, the record is devoid of competent summary judgment evidence that [defendant] had Plaintiff's authorization to interfere with his FMLA leave." Id.

Assuming for the moment that the Court in Benitez is correct, that mere communication with an employee on leave constitutes "interference," Deighan's claim cannot prevail under that standard. While the employer in Benitez provided no evidence that it had permission to contact its employee, such evidence is present here. Carl Mitchell admitted to texting and

10

emailing with Deighan during his leave period, but the undisputed evidence shows that it was Deighan who initially reached out to Mitchell, which then led to several subsequent communications. (Pl.'s Obj. Ex. L; Mitchell Depo. 48:15-17, ECF No. 27-2.) Deighan cannot now claim interference based on communications that he initiated, especially given that Deighan has provided no evidence that he, after initiating contact with Mitchell, ever asked Mitchell to cease communicating with him.

As to Todd Sanislow, Deighan provided evidence that an email conversation occurred between them during Deighan's leave period. Once again, however, the evidence shows that it was Deighan who initiated the communication. The first email from Sanislow provided by Deighan begins with Sanislow saying, "[n]ice to hear from you David, I hope you're doing better. I miss you. . . . My best to you and your family for the 4th." (Pl.'s Obj. Ex. M, ECF No. 27-2.) This is not an initiation of contact on a work-related matter (as was the case in Benitez), but rather a seemingly friendly response regarding a personal matter. Deighan has provided no evidence that Sanislow's response was somehow an uninvited communication; in fact, Deighan's reply to Sanislow's email suggests just the opposite when Deighan responds: "Miss you more . . . can't wait to get back to normal . . . thinking my heart and brain can't handle

11

the stress of the DM job . . . please let me know if you hear of opportunities?" Id. To the extent the exchange touched upon work, it was Deighan who initiated the dialogue and requested that Sanislow continue contacting Deighan going forward to discuss other job opportunities at SuperMedia. (Id.)

Neither the plain language of the FMLA and RIPFMLA nor any case law cited by the parties stands for the proposition that a company's employees are strictly prohibited from communicating with another employee on medical leave under the FMLA or RIPFMLA. While a situation may arise in which an employer's unwanted communications about work-related matters provide the basis for an interference claim, Deighan has provided no evidence that this is such a case. The undisputed evidence on the record shows that the communications between Deighan and both Mitchell and Sanislow were reciprocal and initiated in the first instance by Deighan. Furthermore, Deighan does not even assert, let alone provide evidence suggesting, that he ever requested that these communications cease. In the absence of any evidence tending to show that Deighan either (1) did not in fact initiate these communications, or (2) at some point sought to discontinue the communications that he initiated, summary judgment is appropriate.

2.  Retaliation Claim

To bring a successful retaliation claim under the FMLA and RIPFMLA, Deighan must demonstrate "a causal connection between [his] protected conduct and [an] adverse employment action." Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 719 (1st Cir. 2014); Pagan-Colon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 8 (1st Cir. 2012) ("[A] crucial component of an FMLA retaliation claim is some [evidence of] animus or retaliatory motive on the part of the plaintiff's employer that is connected to protected conduct."). The existence of a causal connection is determined by employing the common burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The First Circuit has described this framework as follows:

> McDonnell Douglas allocates the burdens of production and persuasion in accordance with a three-step procedure. Under that framework, a plaintiff employee must carry the initial burden of coming forward with sufficient evidence to establish a prima facie case of discrimination or retaliation. If he does so, then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination, sufficient to raise a genuine issue of fact as to whether it discriminated against the employee. The employer must clearly set forth, through the introduction of admissible evidence, the reasons for the employee's termination. The explanation provided must be legally sufficient to justify a judgment for the employer. If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and

13

> the plaintiff retains the ultimate burden of showing
> that the employer's stated reason for terminating him
> was in fact a pretext for retaliating against him for
> having taken protected FMLA leave.

Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 160-61 (1st Cir. 1998) (internal citations, quotations, and brackets omitted).

To establish a prima facie case of retaliation (the first step of the McDonnell Douglas framework) Deighan must provide evidence to show that "(1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; [and] (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action." Id. at 161. Deighan arguably fails at this first step. While there is no dispute that Deighan availed himself of a protected right (i.e., taking medical leave) and was subsequently subject to an adverse employment action (i.e., SuperMedia backfilled his position), Deighan provides no evidence to connect the two events or support his assertion that SuperMedia backfilled his position because he previously took FMLA and RIPFMLA leave.

There is no dispute that, at the conclusion of Deighan's FMLA and RIPFMLA medical leave period in August of 2012, SuperMedia allowed Deighan to return to work at his previous position. (Pl.'s Obj. 24, ECF No. 27-1.) There is also no

14

dispute that, when Deighan notified SuperMedia that he was still medically unable to work at the conclusion of his FMLA and RIPFMLA leave, SuperMedia went beyond the statutory requirements by agreeing to (1) provide Deighan with three additional months of short-term medical leave through November 16; and (2) allow Deighan to return to his previous position in sales management at the conclusion of that medical leave period. At the conclusion of that _additional_ leave period, Deighan was _again_ provided the opportunity to return to his previous sales management position, but was still medically unable to do so. It was only after Deighan was again unable to return to work (a full three months after the conclusion of his FMLA and RIPFMLA leave) that SuperMedia began the process of backfilling his position.

Deighan responds by arguing that the temporal proximity between his taking FMLA and RIPFMLA leave and SuperMedia backfilling his position is alone sufficient to establish a _prima facie_ case of retaliation. (_Id._ at 26.) Some cases have held that "very close" temporal proximity between an employee's taking of leave and an adverse employment action is sufficient to establish a _prima facie_ case for discrimination. _See, e.g.,_ _Clark County School District v. Breeden_, 532 U.S. 268, 273-74 (2001); _Calero-Cerezo v. United States Dep't of Justice_, 355

15

F.3d 6, 26 (1st Cir. 2004). While it is true that the burden of establishing a prima facie case is supposed to be "quite easy to meet," Hodgens, 144 F.3d at 165 (quoting Villanueva v. Wellesley College, 930 F.2d 124, 127 (1st Cir. 1991)), the cases require a showing of some connection between the taking of the leave and the adverse employment action, and here the Plaintiff has failed to make that connection.

But even assuming that Deighan has established a prima facie case, Deighan's claim still fails. Step two of the McDonnell Douglas framework looks to whether SuperMedia has provided a "legitimate, nondiscriminatory reason" for backfilling Deighan's position. Id. at 160-61. SuperMedia has met this burden. Both during Deighan's medical leave period and at all points during the present litigation, SuperMedia has made clear that there was a "business need" to fill Deighan's sales manager position on a permanent basis. (Defs.' Mot. Exs. D, F, ECF No. 25-3; Sanislow Decl., ECF No. 25-4.) As SuperMedia has explained, Deighan's "division sales manager" position was responsible for many important tasks within the company, including the supervision of other "district sales managers." (Sanislow Decl. ¶¶ 4-5, ECF No. 25-4.) SuperMedia was able to fill this position on a temporary basis through November 16 (the last day of Deighan's short-term disability period, as an

16

accommodation to Deighan), but made it clear that using a temporary employee was not an effective long-term solution. (<u>Id.</u> at ¶¶ 27-28; <u>see also</u> Pl.'s Obj. Ex. A, Deighan Depo. 193:3-11, ECF No. 25-3.) Therefore, when Deighan notified SuperMedia that he would not be returning on November 16 because of continued mental health issues, SuperMedia began the process of back-filling Deighan's position permanently, again explaining its business need to do so. (Pl.'s Obj. Ex. B; ECF No. 27-2.)

SuperMedia has met its burden of "produc[ing] enough competent evidence which, if taken as true, would permit a rational factfinder to conclude that the challenged employment action was taken for a legitimate, nondiscriminatory reason." <u>Hodgens</u>, 144 F.3d at 166 (internal citations omitted). The burden therefore shifts back to Deighan – under step three of the <u>McDonnell Douglas</u> framework - to "demonstrate that there is a trialworthy issue of pretext." <u>Id.</u> at 167; <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 54 (1st Cir. 2000) ("The employer's burden is merely a burden of production; the employee maintains the burden of proof throughout. If the employer meets its burden, the presumption of discrimination evaporates.") (internal citations omitted). Deighan must therefore point to "specific facts" that SuperMedia's proffered business need was actually a pretext masking a "retaliatory

motive" related to his taking of FMLA and RIPFMLA leave the prior summer. See, e.g., Calero-Cerezo, 355 F.3d at 26 (after noting that temporal proximity was sufficient to establish a prima facie case, the Court affirmed summary judgment for defendant because plaintiff "failed to point to specific facts that would demonstrate any sham or pretext intended to cover up defendants' retaliatory motive"); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 20 (1st Cir. 1999).

Deighan points only to a single piece of evidence (beyond temporal proximity) to establish his discrimination claim: the Declaration of Michael A. Green. (Pl's Obj. 26, ECF No. 27-1 (citing Pl.'s Obj. Ex. J, Green Decl., ECF. No. 27-2.)) Like Deighan, Green was a SuperMedia employee who worked under the supervision of Sanislow. (Pl.'s Resp. Ex. J, Green Decl. ¶ 7, ECF. No. 27-2.) In 2000, Green suffered from depression and took FMLA leave for approximately four months. (Id. at ¶ 9.) Green alleges that, upon returning to work, Todd Sanislow retaliated against Green as follows:

> 16. After I returned from my medical leave, Mr. Sanislow made comments to me about my medical condition.
>
> 17. On at least a few occasions, Mr. Sanislow made remarks to me about my depression, including a joke about me riding my lawn mower up the street and not knowing where I was.

18

(Id. at ¶¶ 16-17.)

In 2006, Green again took FMLA leave because of a knee injury. (Id. at ¶ 18.) According to Green, in the aftermath of both of his FMLA leave periods, Sanislow held a grudge against Green. As proof of this accusation, Green alleges that, in 2011 (over ten years after Green took FMLA leave for depression), Sanislow "wrongfully accused [Green] of being dishonest and [Green's] work performance was unfairly questioned." (Id. at ¶ 29.) Green also claims that Sanislow placed him "on a performance improvement plan for a few months" in 2012, transferred him to another location, and instructed other employees to treat him poorly, all in an effort to force Green to leave his job. (Id. at ¶¶ 30-40.)

Deighan argues that Sanislow's conduct toward Green evidences Sanislow's discriminatory attitude toward employees with disabilities and is sufficient to demonstrate pretext in Deighan's case. Even assuming that everything Green asserts is true, this does not come close to meeting the Plaintiff's burden of establishing a possibility of pretext. "Anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff." Carmona Rios v. Aramark Corp., 139 F. Supp. 2d 210, 216 (D.P.R. 2001) (quoting Wyvill v.

United Companies Life Ins. Co., 212 F.3d 296, 302 (5th Cir. 2000)). For employees to be considered "similarly situated" they must "have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." Rodriguez-Cuervos, 181 F.3d at 21.

Even assuming Green's experience constitutes evidence of discrimination, the conduct alleged is simply too dissimilar from Deighan's experience to "establish that discrimination was [the] company's standard operating procedure." Carmona Rios, 139 F. Supp. 2d at 216 (quoting Wyvill, 212 F.3d at 302). In the first place, Green suffered from two illnesses (both of which were different than Deighan's illness) which required two separate FMLA leave periods during a five-year timeframe (compared to Deighan's one FMLA leave period that occurred over a single summer). Moreover, Green was subject to completely different treatment than Deighan. While Green was allegedly treated poorly in the workplace immediately after returning from leave (and then again almost ten years later), Deighan does not claim to have been the subject of any adverse treatment in the workplace. Instead, Deighan's position was backfilled several months after his FMLA and RIPFMLA leave had concluded while he

20

was still outside the workplace on medical leave. Given these differences, the Green Declaration does not suffice to establish a triable issue of fact as to whether SuperMedia's "stated reason for terminating [Deighan] was in fact a pretext for retaliating against him for having taken protected FMLA leave." Hodgens, 144 F.3d at 161 (internal citations, quotations, and brackets omitted).

The Court is aware of the need for "restraint in granting summary judgment where discriminatory animus is in issue," as "[t]he role of the trial judge at the summary judgment stage is not [] to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Id. at 167 (internal quotations omitted). However, the First Circuit has made clear that – even where an employer's motive is at issue - summary judgment is appropriate if "the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Id. (quoting Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994)). This is precisely the sort of evidence Deighan has provided. In the context of this case, a loose temporal proximity between Deighan's taking of FMLA leave and his position being backfilled, combined with the Green Declaration, do not suffice to create a triable issue of fact as to whether

SuperMedia terminated Deighan's employment because of some "animus or retaliatory motive" related to Deighan's taking leave. <u>Pagan-Colon</u>, 697 F.3d at 8; <u>Hodgens</u>, 144 F.3d at 169 (holding that summary judgment is appropriate if there is insufficient evidence for "a fair-minded jury" to find retaliatory motive). Defendants' Motion for Summary Judgment is therefore granted as to Deighan's discrimination claim.

C. CRPD, FEPA, and RICRA Claims

Plaintiff alleges unlawful disability-based discrimination on the part of SuperMedia in violation of the CRPD, FEPA, and RICRA. The CRPD provides that "no otherwise qualified person with a disability shall, solely on the basis of disability, who with reasonable accommodation and with no major cost can perform the essential functions of the job in question, be subjected to discrimination in employment . . . ." R.I. Gen. Laws § 42-87-2. Similarly, the FEPA prohibits an employer from discriminating against an employee on the basis of a "disability" or refusing to "reasonably accommodate an employee's . . . disability unless the employer can demonstrate that the accommodation would pose a hardship on the employer's program . . . ." R.I. Gen. Laws § 28-5-7(1). Lastly, the RICRA provides that "[a]ll persons within the state, regardless of . . . disability . . . have, except as is otherwise provided or permitted by law, the same rights to .

22

. . the full and equal benefit of all laws . . . ." R.I. Gen. Laws § 42-112-1.

Deighan employs a single analytical framework in discussing his CRPD, FEPA, and RICRA claims using case law addressing the Americans with Disabilities Act. As Deighan notes, "[g]enerally, Rhode Island courts look to federal case law construing the Americans with Disabilities Act ("ADA") in evaluating similar state statutory claims." (Pl.'s Obj. 4 n.1, ECF No. 27-2.) Defendants also treat the CRPD, FEPA, and RICRA claims as having an identical analytical framework derived from ADA case law. (Defs.' Mot. 5 n.3, ECF No. 25-1.) And, indeed, this Court has done the same in previous cases:

> Plaintiff's disability discrimination claims . . . are all filed in triplicate: under FEPA, RICRIHA, and RICRA. Irrespective of which statutory horse he rides, [plaintiff] must traverse the disability discrimination trail, whose contours are best understood by reference to the analysis utilized in the corresponding federal statute, the Americans with Disabilities Act of 1990 ("ADA"). See Tardie v. Rehabilitation Hosp. of Rhode Island, 6 F. Supp. 2d 125, 132–33 (D.R.I. 1998) (if summary judgment is granted as to the ADA claim, it should also be granted as to FEPA and RICRIHA claims), aff'd, 168 F.3d 538 (1st Cir. 1999), (citing Hodgens v. General Dynamics Corp., 963 F. Supp. 102, 104 (D.R.I. 1997) (all other citations omitted)).

Kriegel v. State of Rhode Island, Dep't of Corr., 266 F. Supp. 2d 288, 296 (D.R.I. 2003); see also Hatch v. Pitney Bowes, Inc.,

485 F. Supp. 2d. 22, 37 (D.R.I. 2007). Therefore, the analysis below will address the CRPD, FEPA, and RICRA claims under a single analytical framework derived from ADA case law.

Deighan alleges that SuperMedia took the following three separate discriminatory actions in violation of the CRPD, FEPA, and RICRA: (1) SuperMedia failed to reasonably accommodate Deighan with additional medical leave; (2) SuperMedia subjected Deighan to disparate treatment because his disability was psychological, as opposed to physical; and (3) SuperMedia failed to engage in the required interactive process. (Pl.'s Obj. 6, ECF No. 27-2.)[3] Each is addressed below.

1. Failure to Accommodate and Disparate Treatment Claims

In order to recover under a "failure to accommodate" theory, Deighan must prove: "(1) that he is a person with a disability; (2) that he was nevertheless able to perform the essential functions of his job with reasonable accommodation, and at no 'major cost' to his employer; and (3) that Defendants,

_____

[3] Deighan also asserts that SuperMedia backfilled his position "because of his disability and accommodation request." (Pl.'s Obj. 6; ECF No. 27-1.) While it is not entirely clear to the Court whether this allegation is meant to describe a retaliation claim or a failure to accommodate claim, the claim fails regardless. To the extent that Deighan intended this claim to be analyzed under a "retaliation" theory, the claim fails for the same reason as his other retaliation claims. See supra, note 2. Alternatively, if Deighan intended this claim to be analyzed under a failure to accommodate theory, it fails for the reasons detailed in the following section.

24

despite knowing of his alleged disability, did not reasonably accommodate it." Kriegel, 266 F. Supp. 2d at 297 (citing Carroll v. Xerox Corp., 294 F.3d 231, 237-38 (1st Cir. 2002)). Deighan's "disparate treatment theory" claim must satisfy these same requirements. See Carroll v. Xerox Corp., 294 F.3d at 237 (citing Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999)).

Both Plaintiff and Defendants agree that Deighan had a disability and that SuperMedia, knowing of his disability, refused to provide Deighan an accommodation in the form of additional medical leave through January of 2013. What the parties disagree about is whether Deighan would have been "able to perform the essential functions of his job" if only SuperMedia had provided Deighan the "reasonable accommodation" of additional leave time. Kriegel, 266 F. Supp. 2d at 297. At the summary judgment stage, the employee bears the burden of showing that there is a "trialworthy issue as to whether [he] could have performed an essential function of [his] job . . . with or without a reasonable accommodation." Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 457 (1st Cir. 2016). Deighan fails to meet that burden.

In May of 2012, Deighan was forced to take a thirteen-week leave of absence from his sales management position because of a

psychological disability. When that thirteen-week period ended, there is no dispute that Deighan informed SuperMedia that he was medically unable to work in his previous sales manager position and requested that he be permanently transferred to a new position. Documentary evidence of this request includes an August 13 email from Deighan to SuperMedia's Human Resource Department in which he states that "[d]ue to my disability and recommendation from my doctors, I am not able to hold a sales or sales management position." (Defs.' Mot. Ex. B, ECF No. 25-3.) Additionally, the next day, Deighan submitted a "Job Accommodation Request" form to SuperMedia, in which he stated that "[p]er medical advice, the nature of the direct sales or sales management role caused and would exacerbate my medical condition. . . . I anticipate a permanent accommodation." (Id.)

Once SuperMedia notified Deighan that they could not find an open position for him at his previous salary level (outside his former sales management position), Deighan did request to come back to his former position. SuperMedia notified Deighan that he could return to the sales manager position at the conclusion of his short-term disability leave (on November 16), but only if he could provide medical documentation showing that his mental health status had changed. (Defs.' Mot. Ex. E, ECF No. 25-3.) Alas, Deighan never provided that documentation,

26

despite saying he would. (Id.) And on November 14, Dieghan emailed SuperMedia, explaining that "[d]ue to my current medical condition, my doctors will not approve a RTW date of November 16, 2012. With continued treatment, they are hopeful for a RTW date of early Jan[uary] 2013. Thank you for your continued flexibility." (Pl.'s Obj. Ex. B; ECF No. 27-2.)

Deighan now claims that, despite his previous assertions, he was in fact able to return to his previous position in January of 2013. Therefore, the argument goes, "a reasonable accommodation in the form of a brief extension of his medical leave until January 1, 2013 would have enabled him to" return to work. (Pl.'s Obj. 10; ECF No. 27-1.) But regardless of whether an additional medical leave period was a "reasonable" accommodation request – which is not clear - there is a fundamental flaw with this argument: Deighan has not provided any evidence that he could have performed the sales management job starting in January of 2013.

To support his claim, Deighan has provided deposition testimony in which he explained that, in the fall of 2012, his treating physicians anticipated that he would be able to return to work in January of 2013. (Pl.'s Obj. Ex. A, Deighan Depo. 225:4-19, 240:11-24, 241:1-15, ECF No. 27-2.) However, Deighan's testimony as to what his medical staff told him is inadmissible

27

hearsay, see Fed. R. Evid. 801, and is not competent evidence at
the summary judgment stage:

> [Plaintiff's] account of what [he] think[s] (or
> hope[s]) that [a doctor's] testimony might be —
> amounts to inadmissible hearsay. It is crystal clear
> that [Plaintiff] had no scientific knowledge as to
> causation and was incompetent to testify to any of the
> matters stated. Hearsay evidence, inadmissible at
> trial, cannot be considered on a motion for summary
> judgment.

Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990); see
also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used
to support or oppose a motion must be made on personal
knowledge, set out facts that would be admissible in evidence,
and show that the affiant or declarant is competent to testify
on the matters stated.").

Beyond this inadmissible hearsay, the record is
conspicuously devoid of any medical or other evidence to suggest
that what had previously been described as a "permanent"
disability had since been mitigated to the point that Deighan
could return to work. For example, Deighan did not provide any
medical records, testimony from a medical professional or other
competent expert, or even testimony from a lay witness with
sufficient personal knowledge to suggest that, as of January of
2013, Deighan was "able to perform the essential functions of

28

his job . . . ." <u>Kriegel</u>, 266 F. Supp. 2d at 297. Such
information is necessary because, as Deighan himself admitted in
his deposition, "I'm not a doctor. I can't ascertain my own
condition." (Pl.'s Obj. Ex. A, Deighan Depo. 216:13-14, ECF No.
27-2.) Given this lack of evidence, Deighan has failed to
demonstrate the existence of a "trialworthy issue as to whether
[he] could have performed an essential function of [his] job . .
. with or without a reasonable accommodation." <u>Lang</u>, 813 F.3d at
457.[4]

2.  Failure to Engage in an Interactive Process

Just as Plaintiff's failure to provide sufficient evidence
regarding his ability to return to work forecloses his
"reasonable accommodation" claim, so goes his "failure to engage
in an interactive process" claim. As the First Circuit has
explained, while

> there may be situations in which failure to engage in
> the [interactive] process would constitute a failure

---

[4] Deighan argues that he had no incentive to collect this
sort of evidence back in January of 2013 because SuperMedia had
already backfilled his position and therefore would not have
accepted his medical clearance anyway. But this argument misses
the point. Regardless of whether Deighan was required to provide
SuperMedia with evidence of his fitness to return to work back
in January of 2013, Deighan is still required to provide <u>this
Court</u> with that evidence in order to preclude summary judgment.
<u>Lang</u>, 813 F.3d at 454 (citing <u>Jones</u>, 679 F.3d at 17). To this
day, Deighan has provided no competent evidence that he has ever
been able to return to a sales management position, with or
without an accommodation.

> to provide reasonable accommodation that amounts to a
> violation of the ADA . . , we also consider such an
> omission of no moment if the record forecloses a
> finding that the plaintiff could perform the duties of
> the job, with or without reasonable accommodation.

Kvorjak v. Maine, 259 F.3d 48, 52-53 (1st Cir. 2001) (internal

citations and quotations omitted). Simply put, there is no

liability for an employer that fails to engage in an interactive

process where the employee has failed to provide evidence to the

employer that he or she could perform the essential functions of

the job with or without a reasonable accommodation. There is no

need for an interactive process "unless the interaction could

have led to the discovery of a reasonable accommodation that

would have enabled the plaintiff to perform the essential

functions of her position." Richardson v. Friendly Ice Cream

Corp., 594 F.3d 69, 82 (1st Cir. 2010). As discussed above,

Deighan provided no information to his employer and no competent

evidence to this Court that he was able to perform the duties of

his job starting in January of 2013. There is therefore no

genuine issue of material fact as to whether the interactive

process would have uncovered a reasonable accommodation.

     D. Parties' Other Motions

     Defendants have moved to have portions of their statement

of undisputed facts deemed admitted because Plaintiff failed to

properly rebut those statements in his response under Fed. R.

Civ. P. 56(c). (ECF No. 31.) Additionally, Defendants have moved to strike various statements and pieces of evidence based on evidentiary objections as to relevance and hearsay, as well as contentions that certain facts are not supported by record citations. (Id.) Lastly, Plaintiff has responded by moving to strike portions of Defendants' response to Plaintiff's statement of undisputed facts, as well moving to have portions of Plaintiff's undisputed statement of facts deemed admitted, also pursuant to Rule 56. (ECF Nos. 32 and 33.) Under certain circumstances, motions to admit and strike may be appropriate at the summary judgment stage. See, e.g., Facey v. Dickhaut, 91 F. Supp. 3d 12, 19-20 (D. Mass. 2014) ("A motion to strike is the appropriate means of objecting to the use of affidavit evidence on a motion for summary judgment."). However, the outcome of these motions does not affect the analysis of Defendants' summary judgment motion. As this Court finds that there is no genuine issue of material fact as to all of Deighan's claims, both Plaintiff's and Defendants' other motions are moot.

III. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED. The other motions submitted by Plaintiff and Defendants are DENIED AS MOOT. Judgment will enter for Defendants.

IT IS SO ORDERED.

_William E. Smith_
William E. Smith
Chief Judge
Date: November 29, 2016